IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HANOVER INSURANCE COMPANY,

    Plaintiff,

v.

PAUL M. ZAGARIS, INC., a California corporation, JON PAUL ZAGARIS, KARRIE GOOLD, DANIELLE HARDCASTLE, ESTHER GUTIERREZ, FRED OSHTORY, and MICHAEL P. DUTRA,

    Defendants.

No. C 16-01099 WHA

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this insurance coverage dispute, both sides move for summary judgment. To the extent stated below, the insurer's motion is **DENIED**, and the insureds' motion is **GRANTED**.

## STATEMENT

Plaintiff Hanover Insurance Company issued a "Miscellaneous Professional Liability Policy" to defendant Paul M. Zagaris, Inc. ("Zagaris, Inc."), a real estate brokerage company. The policy covered a year-long period beginning in July 2015 and named defendants, Jon Paul Zagaris, Karrie Goold, Danielle Hardcastle, Esther Gutierrez, Fred Ohstory, and Michael P. Dutra as additional insureds ("individual defendants") for actions taken on behalf of Zagaris, Inc., in their capacities as officers, directors, trustees, and employees of the company (Joint Statement of Undisputed Facts, Exh. C at 2, 10).

The policy provided, *inter alia*, "Professional Services Coverage," as follows (*id.* at 7) (emphasis in original, indicating defined terms):

> **We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** arising from a **wrongful act** in the rendering or failure to render **professional services** by **you**.

Both sides agree that our case involves a "claim" by an insured for "wrongful acts" in the rendering of "professional services," within the meaning of the policy and within the coverage, so this order does not address those definitions.

Section B of the policy carried the title "Defense and Settlement (Included in the Limit of Liability)". That section, as modified by a "Real Estate Professionals Endorsement" appended to the policy, included the following provision (Joint Statement of Undisputed Facts, Exh. C at 7):

> **We** have the right to investigate and a duty to defend any **claim** made under this **policy**, even if the allegations are groundless, false or fraudulent until there is a final adjudication against **you**. If a **claim** is not covered under this **policy**, **we** will have no duty to defend it.

The policy also included several exclusions of coverage. Exclusion 1, as modified by the Real Estate Professionals Endorsement, provided, in pertinent part (*id.* at 34–35):

> This policy does not apply to **claim(s)**
>
> 1. Based upon, arising out of, or in any way relating directly or indirectly to any **insured**:
>
>     a) Committing any intentional criminal, malicious, dishonest or fraudulent act or omission; or
>
>     b) Gaining any profit, remuneration or advantage to which such **insured** was not legally entitled,
>
> provided this exclusion will not apply until final adjudication establishes **a)** or **b)** above and except as listed in Section **A. 3** Personal Injury, **a) & b)** above shall not apply to any **Insured(s)** who is not so adjudged. This exclusion also does not apply to any **Insured** who did not commit, did not participate in committing, or who did not remain passive after learning about one or more of the acts, errors or omissions described in this exclusion;

To repeat, Exclusion 1 "will not apply until final adjudication establishes" one of the two categories of conduct exempted. In turn, two exceptions from that exclusion were stated.

2

Exclusion 11 provided, in pertinent part (*id.* at 12):

> This policy does not apply to **claim(s)**
>
> . . .
>
> 11. arising out of false advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including but not limited to, violations of any local, state or federal consumer protection laws;

\*         \*         \*

In November 2015, a group of California residents sued our insureds in a putative class action in Contra Costa County Superior Court in *Spracher v. Zagaris*, No. CIVMSC15-02030. The *Spracher* plaintiffs were consumers of insureds' brokerage services and purchased natural-hazard disclosure reports in connection with the brokerage services. The complaint in *Spracher* alleged that our insureds engaged in a scheme to receive secret profits via kickbacks from the sale of the natural-hazard disclosure reports acquired from a shell corporation that, in turn, purchased the reports for half the price charged to our defendants' clients. The shell corporation then shared that profit with our defendants, who never disclosed that interest to their clients, allegedly in breach of their fiduciary duties.

The complaint in *Spracher* alleged claims for breach of fiduciary duties, aiding and abetting such breaches, violations of Section 1710(3) of the California Civil Code (prohibiting "deceit" by omission when obligated to disclose), violations of Section 17200 of the California Business and Professions Code, constructive fraud, unjust enrichment, civil conspiracy, and accounting.

Our insureds tendered the *Spracher* action to Hanover, who agreed to defend it subject to a reservation of rights. The reservation-of-rights letter recited certain terms of the policy and recited a version of Exclusion 1 (not Exclusion 11) that had, in fact, been superseded by the version in the Real Estate Professionals Endorsement (Joint Statement of Undisputed Facts, Exh. D at 3).[1]

---

[1] The cited version of Exclusion 1 omitted the language providing that "This exclusion also does not apply to any **Insured** who did not commit, did not participate in committing, or who did not remain passive after learning about one or more of the acts, errors or omissions described in this exclusion," but it was otherwise the same as the language in the endorsement.

3

A supplemental reservation-of-rights letter next omitted reference to Exclusion 1 in either its original or its modified form, instead relying on Exclusion 11 (and Exclusion 15, which involved claims for reimbursement of fees, not at issue herein). The supplemental reservation-of-rights letter described its application of those exclusions, as follows (*id.*, Exh. E at 2):

> Based on Policy 11, Hanover is defending under a reservation of rights those counts for violations of California's deceptive practices act [*sic*] and business code prohibiting unfair, unlawful or fraudulent and unfair competition. Likewise, under Exclusions 15, [*sic*] Hanover is defending under a reservation of rights those claims being made for an accounting of your fees and for a constructive trust. Your policy simply does not provide coverage for return of fees.

In March 2016, Hanover filed the instant case here in federal district court in San Francisco seeking (i) declaratory judgment that it had no duty to defend and (ii) reimbursement of attorney's fees and costs incurred in defending the *Spracher* action. An order denied insureds' motion to dismiss for lack of subject-matter jurisdiction. (That motion contended the amount in controversy had not been adequately alleged.) That order also denied insureds' request to stay this action pending resolution of the *Spracher* action.

After full discover herein, Hanover moves for partial summary judgment on its claim for declaratory judgment only, and insureds move for summary judgment on all claims. This order follows full briefing, including supplemental briefing directed at a nationwide search for decisions on point, and oral argument.

**ANALYSIS**

All agree that California law applies to this coverage dispute and that the interpretation of an insurance policy is a matter of law. *See Smyth v. USAA Prop. & Cas. Ins. Co.*, 5 Cal. App. 4th. 1470, 1474 (1992). All further agree for the purposes of this motion that the allegations in the *Spracher* action are "claims" against insureds for "wrongful acts" in the rendering of "professional services" and that the only material facts are the text of the policy, the text of the complaint and amended complaint in *Spracher*, and the reservation of rights letters, none of which is in dispute. Those five documents have been provided as exhibits to the parties' "Joint

4

Statement of Undisputed Facts in Support of Cross-Motions for Summary Judgment" (Dkt. No. 57). Neither side submitted any additional factual material.

The only question is whether the *Spracher* matter is subject to Exclusion 11. Hanover contends Exclusion 11 applies to the *Spracher* matter in its entirety, and so it has no duty to defend any of our defendants. Insureds respond that certain allegations in the *Spracher* matter do not necessarily fall within Exclusion 11, and even if that exclusion applies to that action as a whole, Exclusion 11 must be interpreted in harmony with Exclusion 1, which does not apply unless or until there is a final adjudication against the insureds on the excluded claims.

When seeking declaratory relief on the issue of the duty to defend, an insured "must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 300 (1993) (emphasis in original). Where, as here, an insurer relies on exclusionary language as the basis for denying coverage, the insurer "has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds." *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1039 (2002).

An important guiding principle in interpreting an exclusion is that "any limitation on the coverage provided by a liability insurance policy must be express and consistent with the reasonable expectations of the insured." *American Safety Indem. Co. v. Admiral Ins. Co.*, 220 Cal. App. 4th 1, 4 (2013), *review denied* (Dec. 18, 2013). That is, "doubts concerning the potential for coverage and the existence of a duty to defend are resolved in favor of the insured." *Reg'l Steel Corp. v. Liberty Surplus*, 226 Cal. App. 4th 1377, 1389 (2014). In a "mixed action," that is, one with both potentially-covered claims and excluded claims, "the insurer has a duty to defend the action in its entirety prophylactically, as an obligation imposed by law in support of the policy." *Buss v. Superior Court*, 16 Cal. 4th 35, 48 (1997). The entire policy, as with any contract, must be read together, "so as to give effect to every part, if reasonably practicable . . . ." Cal. Civ. Code § 1641.

5

1  Hanover contends the *Spracher* action is entirely excluded from coverage by
2  Exclusion 11 because each cause of action therein arises out of "deceptive business practices."
3  Our insureds respond that the *Spracher* action is a "mixed action" because there remains a
4  potential for coverage for some causes of action — for breach of fiduciary duty and constructive
5  fraud — which will *not* rely on a finding of deceptive business practices. Thus, they argue,
6  Hanover has a duty to defend *all* claims. This order finds there is a potential for coverage of
7  certain claims in the *Spracher* action notwithstanding Exclusion 11, so Hanover has a duty to
8  defend the action.[2]

9  As stated, Exclusion 11 exempts Hanover's duty to defend claims "arising out of false
10  advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade,
11  unfair or deceptive business practices, including but not limited to, violations of any local state
12  or federal consumer protection laws." Our insureds concede that the *Spracher* action asserts
13  some causes of action — such as those alleging unfair competition — that are exempted from
14  coverage pursuant to Exclusion 11.

15  The key question is whether the causes of action for breach of fiduciary duty and
16  constructive fraud "arise out of . . . deceptive business practices" such that Exclusion 11 applies
17  to those claims as well. All agree that interpretation of this exclusionary language is a question
18  of first impression.[3]

19  Hanover principally relies on *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 840
20  (1999). There, the insured purchased a commercial general liability policy to cover sums he
21  became legally obligated to pay as damages because of property damage to a parcel of land he
22  leased for use in selling and servicing automobiles. When the insured discontinued his
23  business, the land reverted to the lessor. The lessor discovered the insured/lessee had

---

[2] This order need not address the insureds' second argument, that Exclusion 1 and Exclusion 11 conflict, requiring a defense through final judgment.

[3] Our insureds point out that this language has been discussed in two decisions, but neither construed the exclusions therein. *See Sony Computer Ent. Am. Inc. v. Am. Home Assur. Co.*, No. 04-0492, 2005 WL 3260483, at *7 (N.D. Cal. Dec. 1, 2005) (Judge Phyllis Hamilton), *affirmed*, 532 F.3d 1007 (9th Cir. 2008); *Hanover Ins. Co. v. Mason Mcduffie Real Est., Inc.*, No. 16-01114, 2016 WL 7230868 (N.D. Cal. Dec. 14, 2016) (Judge Jon Tigar).

1  contaminated the property and commenced an action asserting, *inter alia*, a cause of action for
2  breach of contract.  The insured sought coverage under his policy.  The insurer contended the
3  policy referred only to tort liability, not contractual liability.  The California Supreme Court,
4  rejecting a long line of decisions in the California Court of Appeal, held that the insurer had a
5  duty to defend.

6      *Vandenberg* noted that a distinction between the form of a legal remedy was arbitrary,
7  "when we consider the same act may constitute both a breach of contract and a tort." *Ibid.*
8  "[C]ourts must focus on the nature of the risk and the injury, in light of the policy provisions" to
9  determine coverage, not to "the fortuity of the form of action chosen by the injured party." *Id.*
10 at 838, 840.  To hold otherwise would "permit the injured third party to determine insurance
11 coverage." *Id.* at 840.  Thus, the insurer had a duty to cover an action that arose from the risk of
12 damage covered by the policy — property damage — notwithstanding that the remedy sought
13 — contract damages — was not the traditional remedy for that kind of injury.

14     Hanover contends that the *Spracher* action *as a whole* arises out of deceptive business
15 practices because our insureds' "alleged deception is at the heart of each cause of action against
16 it" (Pl.'s Opp. at 6).  But our insureds' alleged *deception* is *not necessarily* at the heart of the
17 breach-of-fiduciary-duty and constructive-fraud causes of action in *Spracher*.  "Breach of a real
18 estate agent's fiduciary duty to his or her client may constitute negligence or fraud, depending
19 on the circumstances of the case." *Slahutdin v. Valley of California, Inc.*, 24 Cal. App. 4th 555,
20 563 (1994).  Similarly, "constructive fraud comprises any act, omission or concealment
21 involving a breach of legal or equitable duty, trust or confidence which results in damage to
22 another *even though the conduct is not otherwise fraudulent*." *Id.* at 562 (citation omitted)
23 (emphasis in original).  Thus, those causes of action rely only on our insureds' omissions —
24 whether or not fraudulent or deceptive — and not on the alleged deception that supports the
25 *Spracher* plaintiffs' other claims.

26     Hanover paints all the allegations in *Spracher* with a broad brush of "deceptive business
27 practices," relying on *Vandenberg* for the proposition that we should completely disregard the
28

7

actual form of the particular cause of action. *Vandenberg* does not stand for so sweeping a proposition:

> *Vandenberg* said no more than whatever the interpretation to be given to the term "legally obligated," it must be broad enough to include "damages for breach of contract as well as for tort." The court was only making the simple point that it was not the "form of the proceeding" that would control coverage, but rather that the issue would be resolved by a determination as to whether the acts of the insured had created a risk covered under the policy which resulted in either bodily injury or property damage to another. If those requirements were satisfied, it would not matter that the third party claimant's theory of recovery was based on contract rather than on tort.

*Contl. Cas. Co. v. Super. Ct.*, 92 Cal. App. 4th 430, 447 (2001) (citations omitted). The cause of action in *Vandenberg* necessarily arose from property damage regardless of whether it was based on a theory of contract or tort. Here, the breach-of-fiduciary-duty and constructive-fraud causes of action do *not* necessarily arise from deceptive business practices. It remains possible that our plaintiffs would be found *not* to have engaged in deceptive business practices, even if they are found to have breached their fiduciary duties by failing to disclose their interest in the sales of natural-hazard disclosure reports, or engaged in constructive fraud via the same omission. It is only through the "fortuity of the form of action chosen by the injured party," namely, a class-action asserting some claims that *do* rely on deception, that the question of deception arose at all.

Hanover would recast the causes of action that do not rely on deception at all (much less business practices) as equivalent to those that rely on deceptive business practices. This sleight of hand is facilitated by the fact that both are asserted in the same complaint, but it runs directly contrary to the principle that an insurer must defend the entirety of a mixed action. *See Buss*, 16 Cal. 4th at 48.

Hanover cites *Byars v. SCME Mortgage Bankers, Inc.*, 109 Cal. App. 4th 1134, 1147 (2003), for the proposition that "deceptive business practices" include those business practices business practices that are likely to deceive the public. *See also Wright v. Safari Club Int'l, Inc.*, 322 Ga. App. 486 (2013); *Burstein v. Sun Life Assur. Co.*, 2013 WL 1905143 (E.D.Pa. May 8, 2013) (*Judge Harvey Bartle III); *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006,

8

1024 n.7 (S.D. Iowa 2009) (Chief Judge Robert Pratt); *Curtis Mfg. Co. v. Plasti-Clip Corp.*, 888 F. Supp. 1212, 1228 (D.N.H. 1994) (Judge Shane Devine). But Hanover still fails to overcome the hurdle already identified, namely that our insureds may yet be found liable for constructive fraud or omissions that do not qualify as deceptive business practices under the law.

Although neither side addressed it, it is worth distinguishing *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819 (2006). There, the policy defined covered losses to exclude damages arising out of breach of contract. The insurer contended it owed no duty to defend the insureds in litigation involving breaches of duties relating to the administration of certain bonds, although no cause of action for breach of contract was asserted. Because the insureds' "potential liability would not exist without the contracts" executed in connection with the issuance of the bonds and the duties prescribed therein, the California Court of Appeal held that the litigation arose out of a breach of contract and thus fell outside the scope of coverage. *Id.* at 830.

By contrast here, the potential for coverage remains because our insureds' potential for liability *could still exist* independent of their alleged deception. Hanover has failed to meet its burden to show "through conclusive evidence, that the exclusion applies in all possible worlds." *See Atlantic Mutual*, 100 Cal. App. 4th at 1039. If Hanover intended for Exclusion 11 to exempt all causes of action arising from a nucleus of fact in which deception is alleged — even if deception did not relate to each and every cause of action — it needed to do so with clearer terms. Absent a clear exclusion, Hanover retains a duty to defend all claims in the *Spracher* action.

**CONCLUSION**

To the extent stated above, Hanover's motion for partial summary judgment on its declaratory judgment claim is **DENIED**, and the insureds' motion for summary judgment is **GRANTED**. Judgment will follow.

As a final note, this order makes clear that it has not held the undue complexity and convolution of the policy and its various riders and endorsements against the insurer. The ordinary mortal would have difficulty in sorting through the paperwork to grasp how they

relate. It takes a master logician to see that the exception to the exclusion applies only to that exclusion. Even the insurer's first reservation of rights letter seems to have confused itself over which exclusion the insurer thought applied. Nevertheless, putting all the prolixity aside, and taking the policy as a coherent document, this order is compelled under the law to deny the insurer's effort to excuse itself from the case.

**IT IS SO ORDERED.**

Dated: February 23, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE